**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 22-cv-0354-WJM-SP

BRUMATE, INC.,

      Plaintiff and Counterclaim Defendant,

v.

WALMART INC.,

      Defendant and Counterclaimant.

---

## ORDER DENYING MOTION TO TRANSFER

---

Plaintiff Brumate, Inc. sues Defendant Walmart Inc. alleging infringement of its patented gasket, which is designed to keep cans within its insulated beverage containers even when held upside down.  (ECF No. 25.)  Defendant asserts counterclaims seeking declaratory judgments of noninfringement, invalidity, and unenforceability due to inequitable conduct.  (ECF No. 52.)  Currently before the Court is Defendant's Motion to Transfer Under 28 U.S.C. § 1404(a) ("Motion"), seeking to transfer this case to the Western District of Arkansas.  (ECF No. 35.)

For the reasons stated below, the Court the Motion is denied.

## I. BACKGROUND[1]

Plaintiff was founded by Dylan Jacob as an Indiana LLC in 2016.  (ECF No. 36 at 1.)  In 2019, Jacob moved to Denver, Colorado, and the business was later reformed as

---

[1] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

a Colorado corporation and reformed again as a Delaware corporation. (*Id.*) Plaintiff asserts that, beyond incorporation in Delaware (like many of the most prominent businesses in the United States, including Defendant) it has no ties to any state other than Colorado and no country other than the United States. (*Id.* at 5–6; ECF No. 51 at 1–5.) Defendant argues that, despite Plaintiff's representations, Plaintiff has only weak ties to Colorado and has operations in Florida and potentially Australia. (ECF No. 35 at 7–9; ECF No. 42 at 2–4.) Defendant also notes via Jacob's Instagram that he has worked while traveling in Canada and New Zealand. (ECF No. 42 at 2–4.)

On July 20, 2021, the United States Patent and Trademark Office issued to Plaintiff U.S. Patent No. 11,064,830 (the "Patent"), titled "Gaskets and Beverage Container Systems and Kits Comprising Gaskets," with Jacob listed as the inventor. (ECF No. 25 at 2; ECF No. 35 at 12.) The Patent was issued based on an application filed in October 2019, which was a continuation-in-part of two other patent applications filed in April 2019. (ECF No. 25-1 at 2, 59.)

Sometime in 2019, third-party Olivet International Inc. ("Olivet") "researched, designed, and developed" the Ozark Trail Insulated Stainless Steel 12-Ounce Slim Can Drink Sleeve (the "Drink Sleeve Product") in collaboration with Defendant. (ECF No. 35-2.) Defendant purchased the Drink Sleeve Product from Olivet and began selling it in its retail stores and online. (*Id.*) Defendant asserts that all communications concerning the research, design, demonstration, and purchase of the Drink Sleeve Product occurred in Bentonville, Arkansas, where Defendant is headquartered and Olivet maintains an office. (*Id.*) Employees at Defendant and Olivet involved in Defendant's purchase of the Drink Sleeve Product submitted declarations that all

records relating to its development and sale are located in Bentonville, Arkansas.  (*Id.*; ECF No. 35-1 at 4.)

Plaintiff soon became aware that Defendant was offering and selling the Drink Sleeve Product at its retail locations and online.  On June 5, 2020, counsel for Plaintiff sent Defendant a letter alerting it to its pending patent application[2] and its "concerns about the Drink Sleeve Product potentially infringing the Patent once it issued."  (ECF No. 25 at 3.)  This letter was forwarded to Olivet.  (*Id.*)  Plaintiff alleges that on August 30, 2021, its counsel sent a letter directly to Olivet's counsel, alerting it to the issuance of the Patent and requesting that it "stop making, using, offering to sell, or selling the Drink Sleeve Product."  (ECF No. 52 at 6–7.)  On November 9, 2021, counsel for Plaintiff sent another letter to Olivet, copying Defendant's in-house counsel.  (ECF No. 25 at 4.)  Plaintiff filed this lawsuit on February 9, 2022.  (ECF No. 1.)

## II.  LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The party seeking to transfer a case bears the burden of establishing that the existing forum is inconvenient.  *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).  In ruling on a motion to transfer venue, district courts must assess two issues: (1) whether the case might have been brought in the proposed transferee district, and (2) whether the "competing equities" weigh in favor of adjudicating the case in that district.  *See Hustler Magazine, Inc. v. U.S. Dist. Court for the Dist. of Wyo.*, 790 F.2d 69, 71 (10th Cir. 1986);

---

[2] The parties dispute which patent application the June 5, 2020, letter referenced but agree that the letter was sent and warned of potential infringement.  (*See* ECF No. 52 at 6.)

*Chrysler Credit Corp.*, 928 F.2d at 1516 (defining the "competing equities").  The decision to transfer venue lies in the sound discretion of the district court and should be based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted).

## III.  ANALYSIS

The Court first addresses the applicable law in this action.  As a patent action, the law of the Federal Circuit applies.  28 U.S.C. § 1295(a)(1).  This is less impactful on the outcome of the Motion than it may be on other issues because when a question does not "raise issues unique to [the Federal Circuit's] jurisdiction, [courts] apply the law of the regional circuit in which the district court sits."  *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010); *see also Endizone, LLC v. Asia Focus Int'l Grp., Inc.*, 196 F. Supp. 3d 1222, 1230 (D. Utah 2016).  Therefore, the Court applies the Tenth Circuit's two-part test explained above.  *See supra*, Part II.

There is no dispute (nor could there be) that this lawsuit could have been originally filed in the Western District of Arkansas (the "Western District").  (*See* ECF No. 35 at 7; ECF No. 36 at 5–13 (focusing argument entirely on "competing equities" factors).)  Defendant's principal place of business is in Bentonville, within the Western District.  28 U.S.C. § 1400(b); *id.* § 1391(c)(2); *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 924 (2011).  Therefore, the Court's decision turns entirely on the competing equities.

As set forth in Tenth Circuit case law, the competing equities that must be weighed in a motion to transfer venue under 28 U.S.C. § 1404(a) include the following

factors:

> [1] plaintiff's choice of forum; [2] the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; [3] the cost of making the necessary proof; [4] questions as to the enforceability of a judgment if one is obtained; [5] relative advantages and obstacles to a fair trial; [6] difficulties that may arise from congested dockets; [7] the possibility of the existence of questions arising in the area of conflict of laws; [8] the advantage of having a local court determine questions of local law; and [9] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (internal quotation marks omitted).  The Court will discuss each factor below.

**A.      Plaintiff's Choice of Forum**

The Tenth Circuit has stated that "[u]nless the balance is *strongly* in favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed."  *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972) (emphasis added).  However, the weight courts give this factor is dependent on both the Plaintiff's and the action's relationship to the selected forum.  *See Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010).  This factor weighs most heavily against transfer when the plaintiff files suit in its home forum.  *Cf. Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (*forum non conveniens*). "The plaintiff's choice of forum receives less deference, however, if the plaintiff does not reside in the district."  *Employers Mut. Cas. Co.*, 618 F.3d at 1168.  Lastly, courts "accord little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.'"  *Id.* (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667,

669 (D. Kan. 1993)).

Defendant argues Plaintiff's forum selection should be afforded little weight by undercutting the claims that both Plaintiff and the alleged infringement are closely tied to Colorado.  Defendant argues Plaintiff has overstated its Colorado ties by pointing out that Plaintiff is incorporated in Delaware and provides a Fort Lauderdale, Florida, address to customers on its "Privacy Policy webpage."[3]  (ECF No. 35 at 3–4.)  It also references Jacob's Instagram posts discussing working remotely from New Zealand and Canada and opening a warehouse in Australia.  (ECF No. 42 at 2–3.)  As for the factual connection between this action and Colorado, Defendant argues that because the alleged infringement did not take place "exclusively in Colorado," the Court should give little weight to Plaintiff's chosen forum.  (ECF No. 35 at 8–9; *accord* ECF No. 42 at 4–5.)

Plaintiff argues its selection of its home forum should be entitled to deference.  (ECF No. 36 at 5–6.)  It asserts that Colorado has been its principal place of business since 2019, when Jacob moved from Indianapolis, Indiana, to Denver.  (*Id.*)  According to Plaintiff, while it is a Delaware corporation, its only physical location is in Denver, and Denver is where "[a]ll of [its] product design, marketing, and sales activities occur."  (*Id.* at 5.)  As of the date of filing its sur-reply, Plaintiff had 51 employees, 42 of whom work in Denver.  (ECF No. 51 at 4.)  Plaintiff alleges there *is* a factual connection to this District because, while sales of the Drink Sleeve Product occur nationally and perhaps globally, the *injury* is in Colorado, where Plaintiff resides.  (ECF No. 36 at 7.)

After considering the parties' arguments, the Court concludes that this District is

---

[3] Defendant points out that Plaintiff formerly used Jacob's Denver residence as its official address.  (ECF No. 35 at 3–4.)  The Court does not see how having previously used a different Denver address undercuts Plaintiff's connection to this District, which covers the entire state of Colorado.

Plaintiff's home forum.  While Plaintiff contracts with distributors out of state, its only office and the core of its operations are within Colorado.  (ECF No. 51 at 1–4.)  Further, even if Jacob were regularly working remotely from far-flung locations, he is not a party to this action.

Nevertheless, the Court also concludes that the facts giving rise to this action have no material relationship to this District.  While Jacob purchased the Drink Sleeve Product at one of Defendant's Colorado locations, there is no dispute that the allegedly infringing conduct is occurring in many other places as well. (ECF No. 35 at 7–8; *see* ECF No. 36 at 6–7.)  And because "the 'tort' of patent infringement occurs where the offending act is committed and not where the injury is felt," it is of no factual importance that Plaintiff is domiciled in Colorado.  *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994).

Therefore, the Court gives Plaintiff's selection of this District modest weight.

**B.    Witnesses and Sources of Proof**

"The convenience of witnesses is the most important factor in deciding a motion [to transfer venue] under § 1404(a)."  *Employers Mut. Cas. Co.*, 618 F.3d at 1169 (internal quotation marks omitted).  "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary."  *Id.* (internal quotation marks omitted) (alteration incorporated).

Defendant argues the convenience of key witnesses favors transfer to the Western District, relying on the number of witnesses local to each district, the

involvement of the witnesses in the development of the Drink Sleeve Product, and the unavailability of compulsory process if Olivet employees refuse to voluntarily testify. (ECF No. 35 at 9–12.)  Specifically, Defendant argues it has identified nine witnesses in the Western District compared to Plaintiff's "one true witness—Mr. Jacob," who resides in Colorado.  (ECF No. 42 at 6–7.)  According to Defendant, the testimony its witnesses would provide is "essential" to its affirmative defenses and counterclaims.  (*Id.* at 8.)  Of particular importance, Defendant asserts that it may be denied the benefit of key Olivet witnesses' testimony because they would not be subject to the Court's subpoena power and (as non-employees) are not within Defendant's control.  (*Id.* at 8.)

Plaintiff responds that Defendant has failed to meet its burden and merely seeks to shift inconvenience from itself to Plaintiff.  (ECF No. 36 at 7–10.)  Plaintiff asserts it has identified four witnesses with relevant knowledge, all of whom live in Colorado. (ECF No. 51 at 6.)  More importantly, Plaintiff argues Defendant has failed to adequately describe the quality of the testimony its witnesses will provide and has failed to show compulsory testimony would be necessary to obtain the testimony of Olivet's employees.[4]  (*Id.* at 5–6.)

The Court finds Defendant has failed to carry its burden to show witness inconvenience.  Tenth Circuit precedent speaks clearly to the facts a movant "must" show to succeed on a motion to transfer.  *Employers Mut. Cas. Co.*, 618 F.3d at 1169. While the Court agrees that several witnesses reside in the Western District, Defendant's vague statements about the materiality of those witnesses' testimony and unsubstantiated assertions about the need for compulsory process are insufficient.  *See*

---

[4] Notably, Defendant had no issue obtaining declarations from Olivet employee Terry Muldoon in support of the Motion.  (*See* ECF Nos. 35-1, 47.)

*id.*

The Court does, however, agree with Defendant that the location of its documentary evidence weighs, in a limited fashion, in favor of transfer.  (*See* ECF No. 35 at 9–10.)  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

Therefore, the Court finds this to be a neutral factor, not favoring one party over the other.

## C.    The Cost of Making the Necessary Proof

Defendant argues that it has more witnesses that would need to travel to Colorado for trial than the number of witnesses that would need to travel from Colorado to Arkansas if this case were transferred.  (ECF No. 35 at 11–12.)  Plaintiff argues this factor is neutral because "[t]ransferring the case to the Arkansas District would merely shift the additional costs and inconvenience from Defendant to Plaintiff."  (ECF No. 36 at 11.)  Plaintiff does not contest that Defendant has identified more relevant witnesses. (*See id.*)

The Court finds this factor weighs slightly in favor of transfer due to the additional travel, lodging, and food costs associated with Defendant's witnesses traveling to Colorado.

## D.    Judgment Enforceability

A judgment obtained in federal court may be enforced in any other federal court through a very simple "registration" process in the federal court where enforcement

would take place.  *See* 28 U.S.C. § 1963.  Thus, there are no barriers to enforcement beyond minimal paperwork and nominal fees, making this factor neutral.

## E.    Relative Advantages and Obstacles to a Fair Trial

Neither party makes an argument with respect to the capacity of this District or the Western District to provide a fair trial.  (*See* ECF Nos. 35, 36, 42, 51.)  Plaintiff briefly comments in a footnote that Defendant's failure to make an argument with respect to this factor "weighs against transferring" this action.  (ECF No. 36 at 4 n.1.)

The Court is confident that the Western District is equally capable of providing a fair trial in this action, and therefore finds this factor neutral.

## F.    Docket Congestion

"When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."  *Employers Mut. Cas. Co.*, 618 F.3d at 1169.

According to the most recently available statistics from the Administrative Office of the U.S. Courts (for the twelve months ending March 31, 2023), the relevant comparative statistics are as follows:

|  | D. Colo. | W.D. Ark. |
|---|---|---|
| **Time from filing to disposition (civil cases)** | 8.8 months | 11.3 months |
| **Time from filing to trial (civil cases)** | 35.9 months | ---[5] |
| **Pending cases per judge** | 519 | 370 |
| **Weighted filings per judge** | 571 | 351 |

[5] The most recent data for time from filing to trial of civil cases in the Western District is from March 2019, prior to the coronavirus pandemic.  At that time, the average was 15.0 months, compared to 30.6 months in this District.  Combined Civil and Criminal Federal Court Management Statistics (March 31, 2023) at 55, 79, https://www.uscourts.gov/file/71612/download (last visited May 22, 2023).  Due to this stale data, the Court gives this statistic little weight.

*See* Combined Civil and Criminal Federal Court Management Statistics (March 31, 2023) at 55, 79, https://www.uscourts.gov/file/71612/download (last visited May 22, 2023).

The Court finds that these statistics ultimately favor the Western District.  While the District of Colorado disposes of civil actions slightly faster than does the Western District of Arkansas on average, it has substantially more pending cases and weighted filings per judge.  And while the Court does not have recent data on the time from filing to trial for civil cases in the Western District, it notes that there was a substantial disparity between the Western District and this District in the most recent year for which data on both districts exist.  *See supra*, n.5.  Moreover, the average time from filing to trial is currently three years in this District.

## G.    Conflict of Laws

The parties agree conflict of laws issues are neutral because the only claim in this action is brought under federal law, and both courts at issue in the Motion are federal courts.  (ECF No. 35 at 13–14; ECF No. 36 at 4 n.1.)  The Court agrees with the parties and treats this factor as neutral.

## H.    Local Courts Determining Questions of Local Law

The parties disagree on whether the Western District has a substantial local interest in this action.  Defendant argues that "[t]hird-party research, design, and development of accused products," (ECF No. 35 at 14), "are significant factors that give the [Western District] a legitimate interest in adjudicating [this] case 'at home,'" *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021).  Plaintiff argues that because only federal law is involved, there are no local interests.  (ECF No. 36 at 12–13.)

Because the Federal Circuit has explicitly rejected Plaintiff's argument, and this issue relates specifically to the consideration of the local interests analysis in patent cases, the Court finds this factor weighs in favor of transfer.  *In re Samsung Elecs. Co.*, 2 F.4th at 1380 ("The district court, however, declares that 'it is generally a fiction that patent cases give rise to local controversy or interest, particularly without record evidence suggesting otherwise.' Local interests are not a fiction, and the record evidence here shows a substantial local interest.")

## I.    All Other Practical Considerations

The only other consideration raised is Defendant's assertion that disposition of the Motion "should take top priority," requesting the Court rule on the requested transfer before taking other action.  (ECF No. 35 at 15.)  Because the Court is ruling on the Motion in this Order, it gives this request no weight.

*    *    *

While all of the foregoing, considered together, modestly favors transfer of this action to the Western District of Arkansas, the balance of the relevant factors does not weigh strongly in favor of the movant.  As a result, the Court will not disturb Plaintiff's forum selection.  *Travelers Indem. Co.*, 467 F.2d at 664.  Thus, in its discretion, the Court finds transfer is not warranted, and this action will be litigated in the District of Colorado.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Defendant's Motion to Transfer (ECF No. 35) is DENIED;

2.     Given that the Magistrate Judge referral duties in this case have been reassigned to United States Magistrate Judge Susan Prose, the Order at ECF No. 21 is

12

VACATED;

3.      The Stay of this action (ECF No. 21) is hereby LIFTED; and

4.      Counsel shall jointly contact the Chambers of Judge Prose by no later than **May 25, 2023**, to schedule a Scheduling Conference pursuant to D.C.COLO.LPtR 2.

Dated this 23rd day of May, 2023.

BY THE COURT:

William J. Martínez
Senior United States District Judge